UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Travis Fawcett,
    Claimant

    v.                                         Case No. 11-cv-253-SM
                                                Opinion No. 2012 DNH 085
Michael J. Astrue, Commissioner,
Social Security Administration,
    Respondent


**O R D E R**


Claimant, Andrew Fawcett, moves to reverse the Commissioner's denial of his application for children's Supplemental Security Insurance disability benefits. See 42 U.S.C. §§ 405(g) (the "Act"). Among other things, he says the Administrative Law Judge who authored the Commissioner's final decision erred in concluding that his impairment did not meet, medically equal, or functionally equal a listed impairment. Respondent objects and moves for an order affirming the final decision of the Commissioner.

For the reasons set forth below, claimant's Motion for An Order Reversing the Decision of the Commissioner, document no. 11, is denied. The Commissioner's Motion for Order Affirming the Decision of the Commissioner, document no. 12, is granted.

**Factual Background**

I. <u>Procedural History</u>

On March 31, 2009, when claimant was a minor, an application for Supplemental Security Income benefits was filed on his behalf. The application asserted that claimant became disabled as of February 1, 2006, as a result of attention deficit hyperactivity disorder (ADHD), anxiety, limited attention span, and a learning disability. The Social Security Administration denied his application.

Pursuant to claimant's request, on December 10, 2010, an Administrative Law Judge ("ALJ") conducted a hearing on claimant's application and considered his claims de novo. Claimant, represented by counsel, appeared and testified. Claimant's mother also testified. The ALJ issued his order on January 3, 2011, concluding that claimant was not entitled to benefits because he did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any listed impairment. The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the time allowed. Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

In response, claimant filed this timely action, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act.  Claimant then filed a "Motion for An Order Reversing the Decision of the Commissioner," document no. 11.  The Commissioner objected and filed a "Motion for An Order Affirming the Decision of the Commissioner," document no. 12.  Those motions are pending.

II.  Stipulated Facts

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  Properly Supported Factual Findings by the ALJ
    are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C.

§§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1]

Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also <u>Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984)

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  Irlanda Ortiz, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  Entitlement to Children's Disability Benefits

The Social Security Act defines a childhood disability as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).  See also 20 C.F.R. § 416.924.

In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine: (1) is the

child engaged in substantial gainful activity; (2) does the child have an impairment or combination of impairments that is severe; and, finally, (3) does the child's impairment meet or equal an impairment listed in Appendix 1, Subpart P of the regulations. See 20 C.F.R. §§ 416.924(b)-(d).  If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or medically equal a listed impairment, the ALJ must then consider whether the child's impairment "results in limitations that functionally equal the listings."  20 C.F.R. § 416.926a(a).

An impairment "functionally equals" the listings if it results in "marked" limitations in two domains of functioning, or if it results in an "extreme" limitation in one domain.  Id.  The six domains of functioning in which the child's abilities are assessed are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Claimant does not assert that he suffers from an extreme limitation in any domain and, therefore, the court need not discuss the elements of such a limitation.

Claimant does, however, assert that he suffers from "marked" limitations in at least two domains of functioning.  A "marked"

limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities . . . . It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2).

## Discussion

I. Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory three-step sequential evaluation process described in 20 C.F.R. § 416.924. Accordingly, he first determined that claimant had not been engaged in substantial gainful activity since her alleged onset date. Next, the ALJ concluded that the medical evidence of record indicates that claimant does suffer from a "severe" impairment - attention deficit hyperactivity disorder. Admin. Rec. 10. Claimant does not challenge either of those findings.

At the third and final step of the sequential analysis, however, the ALJ concluded that claimant does not have an impairment that meets or equals one of the listed impairments. He found that claimant has "less than marked" limitation in

acquiring and using information; attending and completing tasks; interacting and relating with others; and self-care.  He also found that claimant has "no limitation" in moving about and manipulating objects, and in health and physical well-being. Admin. Rec. 14-19.  Accordingly, the ALJ concluded that claimant "has not been disabled . . . since March 31, 2009."  Id. at 19.

## II.   Treating Source Opinion

In finding that claimant's limitations did not equal any listed impairment, the ALJ afforded "some, but only less than controlling weight" to the opinion of Dr. James Fecteau, Jr.  Dr. Fecteau was claimant's treating psychiatrist for most of 2010. In November of 2010, Dr. Fecteau completed a medical source statement of ability to do work-related mental activities, which is a form used for evaluating adults, not children.  See generally 20 C.F.R. pt. 404, subpt. P, app.1 § 112.00 ("There are significant differences between the listings for adults and the listings for children.").  Dr. Fecteau opined that claimant had marked limitations in the ability to make judgments on complex work-related decisions and to carry out complex instructions.  He also opined that claimant had marked limitations in his ability to interact appropriately with the public; interact appropriately with supervisors; and to respond appropriately to usual work situations and to changes in a routine work setting.

In discussing the weight that will be ascribed to the opinions of "treating sources," the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s). . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.

20 C.F.R. § 404.1527(c)(2). See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996) ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."). Importantly, "there is no per se rule" that requires the ALJ to give greater weight to the opinion of a treating physician than to that of a consulting physician. Pacheco v. Astrue, 2009 WL 453370, at * 4

9

(D.N.H. Feb. 24, 2009) (citing <u>Arroyo v. Secretary of Health & Human Services</u>, 932 F.2d 82, 89 (1st Cir. 1991)).

Here, the ALJ found Dr. Fecteau's opinion less than fully credible because, he said, it was inconsistent with evidence from other mental health professionals, with academic reports, and with Dr. Fecteau's own treatment notes.  Admin. Rec. 13-14. Indeed, the record discloses substantial evidence that is inconsistent with Dr. Fecteau's opinion.  For example, Dr. Fecteau's treatment notes indicate that claimant had intact behavioral controls and a bright mood and affect.  Psychologist Stephanie Griffin, who examined claimant, noted that, although he was immature for his age, he behaved well in school and had conflicts with family members that were normal for a person of his age.  She opined that, despite limitations, claimant functioned satisfactorily in all areas.  Claimant's teacher reported that he had only slight problems making and keeping friends, while claimant himself reported that he often spent time at a local teen center and he enjoyed himself.  The record also shows that claimant was progressing academically through school. Finally, the state agency reviewing psychologist, Dr. Michael Schneider, assessed claimant's level of functioning and opined that he had less than marked limitations in the relevant domains.

In short, the ALJ did not err in giving less than controlling weight to Dr. Fecteau's opinion, since the opinion was "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

III.  Functional Equivalent of a Listed Impairment

Claimant asserts that substantial evidence does not support the ALJ's conclusion that claimant does not experience marked limitations in at least two of the six domains of functioning. Instead, he says, the record shows he has marked limitations in acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself.

A.  Acquiring and Using Information

For the domain of "acquiring and using information," the ALJ must consider how well the child acquires or learns information, and how well he uses the information he has learned.  20 C.F.R. § 416.926a(g).  Children between the ages of 12 and 18 should be able "to demonstrate what [they] have learned in academic assignments . . . [and] use what [they] have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation.)"  20 C.F.R. § 416.926a(g)(2)(v).

Here, the ALJ found that claimant had less than a marked limitation in acquiring and using information. Admin. Rec. 14. Claimant says that this finding is not supported by substantial evidence, and that the record shows, instead, that he suffers a marked limitation in this domain. He points out that he was assessed with a full-scale IQ of 81, placing him in the low-average range of intelligence. Moreover, claimant has an Individualized Education Plan and has been in special education programs for many years. Claimant also points out that the coordinator of his special education program, Cathy Calandriello, reported that he has "an obvious problem" in eight of ten areas relating to the acquisition and use of information.[2]

The ALJ's determination appears to be supported by substantial evidence. It is true that evidence of claimant's low-average I.Q. and his participation in special education programs are indicative of his limitations. See e.g., SSR 09-3P, 2009 WL 361924 (Feb. 17, 2009) ("The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s)."). Such evidence, however, is not,

---

[2] Claimant's teacher used the following rating scale: "1 No problem"; "2 A slight problem"; "3 An obvious problem"; "4 A serious problem,"; and "5 A very serious problem." Admin. Rec. 139.

necessarily, conclusive proof of a marked or severe limitation. See id.; see also Miller ex rel. Thompson v. Barnhart, 2006 WL 3237900 (10th Cir. Nov. 9, 2006) (affirming ALJ's determination that claimant, who had full-scale I.Q. of 81, had less than marked impairment in acquiring and using information).  In addition, Ms. Calandriello's report that claimant had "an obvious problem" in eight of ten areas relating to the acquisition and use of information is not necessarily inconsistent with the ALJ's finding that claimant's limitation in that domain is not marked. The ALJ did not say he was equating "an obvious problem" to a "less than marked" limitation, but instead, relied, as he was entitled to do, on the expert opinion of the state agency reviewer, Dr. Schneider.  Dr. Schneider took into account numerous reports in the record, including the teacher's observations of "obvious problems," and concluded that claimant did not have marked limitations.

   Importantly, Dr. Schneider's opinion is consistent with that of the examining consultant, Dr. Griffin, who found that claimant, despite limitations in acquiring and using information, functioned "satisfactorily" in that domain.  In addition, Ms. Calandriello's report, which noted "obvious problems" in some areas, also noted that claimant had only "a slight problem" in

comprehending oral instructions and understanding and participating in class discussions.

In short, whether claimant's limitation in acquiring and using information is marked or less than marked is a close question. Because substantial evidence supports both views, the ALJ's determination must be upheld. See Laureano v. Barnhart, 2005 WL 1240168, at * 6 (D.N.H. May 24, 2005) ("And when the record contains substantial evidence that is capable of supporting two plausible, but conflicting interpretations, the court is compelled to affirm the interpretation adopted by the ALJ.").

B. Attending and Completing Tasks

Attending and completing tasks refers to "how well [the child is] able to focus and maintain . . . attention, and how well [he] begin[s], carr[ies] through, and finish[es his] activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). Children 12 to 18 years old "should be able to pay attention to increasingly longer presentations and discussions, maintain . . . concentration while reading textbooks, and independently plan and complete long-range academic projects." 20 C.F.R. § 416.926a(h)(2)(v). In

14

anticipation of entering the workplace, they "should be able to maintain [their] attention on a task for extended periods of time, and not be unduly distracted by [their] peers or unduly distracting to them in a school or work setting." Id.

Here, the ALJ found that claimant has less than a marked limitation in attending and completing tasks. Admin. Rec. 15. Claimant points out that the record contains several references to his difficulty in maintaining attention and his tendency to be easily distracted. Importantly, however, the record also contains substantial evidence supportive of the ALJ's determination that claimant does not suffer from a marked impairment in this domain. Claimant's treating psychiatrist, Dr. Fecteau, observed that claimant's ADHD symptoms were controlled by medication. And while Ms. Calandriello reported that claimant had an "obvious problem" in five activities relating to the domain of attending and completing tasks, she also reported only "a slight problem" in eight other related activities, including "paying attention when spoken to directly," "focusing long enough to finish assigned activity or task," and "refocusing to task when necessary." Admin. Rec. 140. The ALJ's finding is also supported by the opinion of the examining psychologist, Dr. Griffin, who found that claimant functioned "satisfactorily" in this domain despite some limitations. The state agency reviewing

psychologist, Dr. Schneider, likewise concluded that claimant's limitation in attending and completing tasks is less than marked.

Plainly, the record in this case reveals that claimant suffers from a limitation in his ability to attend to and complete tasks, and there is some evidence that this limitation is marked. But, there is also substantial evidence supportive of the ALJ's determination that the limitation is less than marked. The ALJ's determination must, accordingly, be affirmed.

### C. Interacting and Relating to Others

Interacting and relating to others refers to "how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The regulations state what a child aged 12 to 18 should be able to do:

> By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe

16

> events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 CFR § 416.926a(i)(2)(v).

Here, the ALJ found that claimant suffers less than a marked limitation in interacting and relating to others. Admin. Rec. 16. Although there is evidence to support claimant's assertion that he has a marked limitation in this domain, there is ample evidence to the contrary. For example, although Ms. Calandriello reported that claimant had "an obvious problem" in five activities relating to this domain, she also reported that he had only "a slight problem" in eight other related activities, including "playing cooperatively with other children," "making and keeping friends," and "introducing and maintaining relevant and appropriate topics of conversation." Admin. Rec. 141. The examining psychologist, Dr. Griffin, noted that claimant "seemed immature for his age." Admin. Rec. 239. She also found, however, that despite some limitations in interacting and relating with others, he "still functions satisfactorily" in this domain. Id. at 240. Claimant himself testified that he enjoyed spending time with friends at a local teen center. Admin. Rec. 28. Consistent with this evidence, the state agency reviewer, Dr. Schneider, opined that claimant has less than a marked limitation in this domain.

Because substantial evidence supports the ALJ's determination that claimant does not suffer from a marked limitation in his ability to interact and relate to others, the determination is affirmed.

D. Self-care

"Caring for yourself" refers to how well the child "maintain[s] a healthy emotional and physical state, including how well [he] get[s] his physical and emotional needs met in appropriate ways," how well he copes "with stress and changes in . . . environment," and whether he takes care of his own "health, possessions, and living area." 20 CFR § 416.926a(k). Children ages 12 to 18 "should feel more independent from others and should be increasingly independent in all . . . day-to-day activities." 20 CFR § 416.926a(k)(2)(v). They should begin discovering appropriate ways to express good and bad feelings and should begin thinking seriously about future plans. Id.

Claimant here says the ALJ erred in finding that he has less than a marked limitation in caring for himself. The only supporting evidence claimant points to is Ms. Calandriello's report that claimant has "an obvious problem" in five activities relating to this domain. See Admin. Rec. 143. Other evidence, however, amply supports the ALJ's conclusion. For example, Ms.

18

Calandriello's report also notes that claimant has only "a slight problem" in four other activities related to the domain of self-care, and "no problem" at all in "caring for physical needs." Id.  Other substantial evidence is found in the reports of the state agency reviewer and the examining psychologist, who opined, respectively, that claimant's limitation in self-care is less than marked and that, despite some limitations, claimant functions "satisfactorily" in this domain.  The ALJ's determination that claimant does not suffer a marked limitation in the domain of self-care must, therefore, be affirmed.

   In summary, substantial evidence supports the ALJ's determination that claimant does not have an impairment or combination of impairments that result in marked limitations in two domains of functioning or an extreme limitation in one domain.  His determination, therefore, that claimant's impairment or combination of impairments does not functionally equal a listing is affirmed.


## Conclusion

   There is substantial evidence in the record to support the ALJ's determination that claimant was not disabled.

Claimant's motion to reverse the decision of the Commissioner (document no. 11) is denied, and the Commissioner's motion to affirm his decision (document no. 12) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 16, 2012

cc:  Christopher G. Roundy, Esq.
     Gretchen L. Witt, AUSA